**In the Matter of INTERNATIONAL SWIMMING POOL CORPORATION, Debtor.**

United States District Court
S. D. New York.
June 7, 1960.

Krause, Hirsch, Gross & Heilpern, New York City, for petitioner, Esther Williams; Joel B. Zweibel, New York City, of counsel.

Harte, Natanson & Gordon, New York City, for debtor; George Natanson, New York City, of counsel.

Levin & Weintraub, New York City, for Official Creditors' Committee; Benjamin Weintraub, and Elias Mann, New York City, of counsel.

HERLANDS, District Judge.

Application was made in behalf of Esther Williams, an alleged creditor of the above-named debtor, to the Referee in Bankruptcy, for an order pursuant to Section 326 of the Bankruptcy Act (11 U.S.C.A. § 726), requiring the debtor in possession to file a bond or undertaking to idemnify the estate against loss or diminution.

On April 12, 1960, the Referee in Bankruptcy denied the application. Esther Williams, deeming herself aggrieved, petitioned on April 21, 1960 for review and reversal of said order, and requested that her application for indemnity be granted.

The petitioner's brief frames the issue in the following terms:

"Whether a company filing a Chapter XI petition should be permitted to continue operations without furnishing indemnity, where:

"(1) Upon all of the evidence the estate of the debtor has suffered and will continue to suffer loss and diminution,

"(2) Consolidated operating statements filed are not prepared according to sound and properly ac-

cepted accounting practices and grossly overstate sales,

"(3) Said operating statements do not provide for the accrual of substantial royalties due and owing to the petitioner, and

"(4) Disbursements and operating expenditures are shown to have been improperly incurred and to have been incurred for improper purposes."

The Official Creditors' Committee, representing the general unsecured creditors, urges that the debtor-in-possession be continued in operation of its business without indemnity. The Committee claims that the posting of indemnity may result in an adjudication and liquidation of this business.

The controlling statutory provision is Section 326 of the Bankruptcy Act (11 U.S.C.A. § 726). It provides:

"Where a petition is filed under Section 722 of this title, the court may, upon hearing and after notice to the debtor and to such other persons as the court may direct, order the debtor to file a bond or undertaking, with such sureties as may be approved by the court and in such amount as the court may fix, to indemnify the estate against *subsequent* loss thereto or diminution thereof until, in the event of the entry of an order of adjudication under this chapter, the entry of such order." (Emphasis added.)

The application may be made by any party in interest, including a creditor. Whether an order should be granted requiring the filing of indemnity necessarily depends upon the facts and circumstances of each case. Similarly, the amount of the indemnity, if any, is to be determined by the credible evidence of estimated loss or diminution. See 8 Collier on Bankruptcy (14th ed.) 358; Herzog, Indemnification in Chapter XI Proceedings, 32 J.Nat.Ass'n Referees in Bankruptcy, 52 (1958).

Collier, supra, expounds the rule as follows:

"The granting of an order requiring the filing of an indemnity bond or undertaking lies in the discretion of the court. Even if it appears that there will be loss to or diminution of the estate, the court need not necessarily compel the filing of indemnity * * * in a proper case, even though it appears that there will be some loss or diminution, in the interests of creditors it may be the wiser exercise of discretion not to require indemnity for a limited period."

Asa S. Herzog (now an Official Referee in Bankruptcy), supra, pointedly observes:

"A reasonable view seems to be that the debtor should be afforded a reasonable time to explore the situation with his or the creditors' accountants so that the court can make a fair valuation of the situation. * * * If a not too excessive loss is predicted, the debtor should be permitted to proceed without requiring him to furnish indemnity, provided debtor effects the economies recommended by the Creditors' Committee and the court. * * * Where the Creditors' Committee recommends that no indemnity be required, only the most compelling circumstances should convince the court to contravene their wishes * * *."

In a recent, unreported Chapter XI matter, an order of an Official Referee in Bankruptcy directing $2,000. indemnity was reviewed in this court. Matter of Sea Gull Products Corp., No. 60–B–45 (March 25, 1960). In that case, the debtor showed a net operating loss of $1,911. for the immediately preceding month. There was testimony that the debtor's business was seasonal and that subsequent months would show profitable operations. No evidence with respect to possible future losses was adduced. The creditors' committee had requested that the debtor be continued without indemnity. The Referee's indemnity order was

reversed by the court (Judge E. J. Dimock).

With the foregoing legal discussion as a frame of reference, we turn to a consideration of the facts.

The debtor filed a petition to effect an arrangement under Chapter XI of the Bankruptcy Act on December 29, 1959. The proceedings were referred to an Official Referee in Bankruptcy, who ordered, on the same day, that the debtor be authorized and empowered to continue in possession of its property and to carry on the business previously operated.

The debtor has more than 700 creditors to whom it owes over $1,250,000. The members of the Creditors' Committee are themselves trade creditors for aggregate sums in excess of $500,000. They represent other creditors whose claims aggregate another $500,000. These creditors assert that the petitioner is seeking indemnity in order to force an adjudication in bankruptcy.

The debtor is in the business of manufacturing and selling swimming pools which, prior to this proceeding, were sold under the trade name of "Esther Williams." Miss Williams, the petitioner herein, was and continued to be at the time of the hearings before the Referee, the president of the debtor. The Creditors' Committee claims that she is familiar with the fact that the swimming pool business is at a low ebb in January and February.

The petitioner received royalties from the debtor, for the use of her name, which amounted to more than $600,000. in the three years prior to this proceeding, which terminated her royalty contract. According to the Creditors' Committee, as soon as it appeared that her income from the debtor would cease, she cast about for means of protecting it; and she announced that she would be back in the swimming pool business shortly, representing a new, strong, well-financed company. The Creditors' Committee and the debtor attribute to the petitioner the motive to force the debtor into bankruptcy for the asserted reason that competition from the debtor and its 700 distributors would not be helpful to her new venture. (See Minutes of Hearing on February 26, 1960, pp. 38–39, 45–46, unsworn statements by Mr. Natanson, attorney for debtor; Minutes of Hearing on March 25, 1960, pp. 13–14, unsworn statements by Mr. Natanson.) This was denied by the petitioner's attorney, Mr. Krause, who however said: "There are people who have discussed with Miss Williams the matter of forming another corporation but there is no arrangement that is anywhere near anything more tangible than propositions which are being made to a person of her stature and her position to please lend help to a swimming pool company. * * * Her hope is that International distributors will hold out until September and *by then she hopes to have set up her own well capitalized company*." (Minutes of Hearing of March 25, 1960, pp. 42–43; emphasis added.)

On or before February 11, 1960, the petitioner herein made an application for indemnity by the debtor. At an earlier hearing, the Referee had considered the problem. Upon all the facts and circumstances, including the recommendation of the Creditors' Committee, the Referee permitted the debtor to continue its operations without indemnity.

Hearings continued over a period of many weeks. During that period, the debtor filed consolidated operating statements for the periods ending respectively January 31, 1960 and February 29, 1960. These statements indicated that it was operating at a profit.

The debtor's officers testified that the sale of its products (swimming pools) was subject to seasonal fluctuation and that, with the coming of spring, substantially increased sales and profits were expected. The Creditors' Committee again strongly recommended that the debtor be permitted to continue without indemnity. No evidence was adduced by the petitioner to indicate the probability that the debtor would sustain future losses. Petitioner's counsel merely stat-

ed that, in his opinion, the debtor was not actually showing a profit and that it would show future losses. Cross-examination did disclose inaccuracies in the operating statements.

On February 26, 1960, at a hearing before the Referee, counsel for the Creditors' Committee stated (Minutes of February 26, 1960, pp. 46, 47):

"It is the position of the Committee, after considering this matter, that the debtor should be given a reasonable opportunity to continue without indemnity."

The petition to review is in relation to business done by the debtor in possession from December 28, 1959 to January 31, 1960 and February 29, 1960. Admittedly, this is a poor season for such sales. Subsequent events have shown improvement in operations. In a case involving liabilities of over a million dollars in a seasonal business, losses are not unusual until the seasonal business improves.

■ The purpose of a proceeding under Chapter XI is to give the debtor a reasonable opportunity to rehabilitate itself despite the fact that some losses may be sustained in the transitional period. Necessarily, the Referee in Bankruptcy, who is close to the picture, must be given a reasonable scope of discretion and judgment.

The court has examined the entire file (including the minutes of the hearings on January 8, February 26 and March 25, 1960 and the operating statements) in the light of the petitioner's charges (as elaborated in her brief, pp. 5–8, and as summarized therein, p. 9) "that the consolidated operating statements were not prepared according to accepted accounting principles and practices and grossly overstated sales, * * * that no provision has been made for the accrual of substantial royalties due to Petitioner, and that disbursements have been improperly incurred." The basic considerations dispositive of the petition at bar are not materially affected or substantially impugned by the evidence on which the petitioner relies in making her charges.

■ The Referee's determination not to order indemnity was not contrary to the weight of the credible and material evidence. There was no abuse of discretion. On the contrary, the Referee properly denied the application for indemnity. His order is hereby affirmed. The petition is hereby dismissed. So ordered.