**In re PARR MEADOWS RACING ASSOCIATION, INC., Debtor.**

**FLUSHING SAVINGS BANK, Movant-Appellant,**

v.

**PARR MEADOWS RACING ASSOCIATION, INC., Respondent-Appellee.**

**Nos. 79 C 689, 77 B 2647.**

United States District Court, E. D. New York.

May 14, 1979.

Weil, Gotshal & Manges by Michael L. Cook and Stephen Karotkin, New York City, for Flushing Savings Bank.

Jules V. Speciner, Great Neck, N. Y., for Parr Meadows Racing Association, Inc.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

Appellant-creditor Flushing Savings Bank ("Flushing") appeals from an order of Bankruptcy Judge Robert J. Hall which denied Flushing's motion for an order directing appellee-debtor Parr Meadows Racing Association, Inc. ("Parr") to post indemnity pursuant to Bankruptcy Rule 11–20(d) and Local Rule XI–4 in the amount of $1,000,000.

Parr's sole business is owning and operating a racetrack specifically designed for quarter horse racing. In October 1977 Parr filed a petition for an arrangement under Chapter XI, Section 322 of the Bankruptcy Act, 11 U.S.C. § 722, and Fed.R.Bankr.P. 11–6. Pursuant to an order of the bankruptcy court, Parr was authorized to continue to operate its business and manage its property as a debtor-in-possession.

Flushing is a secured creditor of Parr. Parr is indebted to Flushing, representing a group of banks and others, for an amount in excess of $14,000,000 arising from a construction loan made by Flushing and others to Parr to finance the construction of Parr's quarter horse racetrack. The indebtedness is evidenced by a mortgage note. As security for payment of the mortgage note, Parr granted Flushing a first mortgage lien on the real property and improvements owned by Parr. The property consists of certain improved land upon which is constructed a quarter horse racetrack, stables, a clubhouse, and other appurtenant facilities. Parr's obligations to Flushing are in default and Flushing has demanded payment of the entire indebtedness evidenced by the mortgage note.

The racetrack ceased operating on September 27, 1977 after having been open for a brief time period. Parr voluntarily surrendered its license from the New York State Racing & Wagering Board for the 1977 racing season. Parr withdrew its application for a license for the 1978 racing

season and thus far it has not applied for a license for the 1979 racing season. In order to obtain a license, Parr will have to show that it is financially viable. Parr's financial prognosis, however, is not good.

Parr has generated no income from its business since the filing of the Chapter XI petition more than eighteen months ago. However, as stated by Judge Hall, "the expenses of the property continue relentlessly." Decision of Feb. 20, 1979 ("Decision") at 1. These expenses include fire and liability insurance premiums, real estate taxes, and security guard services, all of which are necessary to maintain and preserve the property of the debtor. These expenses have not been paid, and apparently cannot be paid, by Parr as the debtor-in-possession. In order to preserve the value of the debtor's property, Flushing has been paying many of the named expenses, thereby increasing Parr's indebtedness to Flushing.

As of this date, Parr has been unable to obtain the financing necessary for it to open the racetrack for this year's racing season. In addition, Parr has yet to offer an acceptable Chapter XI plan to its unsecured creditors and it has made no arrangements with its secured creditors.

Thus, not only has Parr been unable to generate income, but also any equity it has in its property is being constantly eroded, and expenses that cannot be met continue to accrue. Moreover, a satisfactory arrangement does not appear to be forthcoming. Based upon this bleak financial picture of Parr, Flushing brought a motion before the bankruptcy court requesting indemnity in the amount of $1,000,000 against subsequent loss or diminution of the estate of the debtor-in-possession. Parr's unsecured creditors did not join in the application for indemnification.[1]

The facts outlined above were the only facts adduced at the hearing before the bankruptcy court. In his decision, Judge Hall stated that if those were the only facts he were to consider, "the Court would in good conscience have to direct the indemnity requested." However, Judge Hall took notice of the fact that Parr is seeking to set aside the lien that Flushing has on Parr's property. Parr has charged that its "financial downfall" was the result of certain improprieties perpetrated by Flushing, or its representatives, and other participants in the construction loan. Parr claims that these improprieties tainted the validity of Flushing's lien. Parr has also charged that organized crime figures were attempting to take over the racetrack, and that "certain political and banking figures were attempting to obtain concessions and kickbacks for their aid in the financing of the track."[2] Decision, *supra*, at 2.

Judge Hall considered Parr's charges to constitute a "serious attack" on Flushing's lien. He then concluded:

> An adjudication which would be caused by an order for indemnity would as a practical matter abort the suit against Flushing. There is no money in the estate to fund the lawsuit and a trustee could not press the suit with the same diligence as the Parr brothers.

> .  .  .  .  .  .

> It would be inequitable to abort the Chapter XI when the trial [to set aside the lien] is so close at hand. If the Parr brothers were the victims of corrupt bankers and politicians and suffered because they resisted attempts by the underworld to take over the track; it would be a travesty of justice if they were prevented at this time from trying their case.

---

1. The failure of the creditors' committee to join in the application for indemnification is not surprising. Parr has asserted that if it were required to post indemnity in the amount demanded by Flushing it would probably be forced to adjudication pursuant to § 327 of the Bankruptcy Act, 11 U.S.C. § 727. Since the value of Parr's property is probably less than the amount owed to Flushing, a secured credi- tor, an adjudication of the debtor could leave the unsecured creditors with no hope of collecting on their debts. Therefore, it is their interests to continue the Chapter XI proceeding at this time.

2. This latter charge is presently being investigated by the Department of Justice.

If the case is adjudicated at this time, Flushing will still be faced with the expenses it has been paying.

The Court has weighed the equities and finds that the imposition of an order of indemnity is not warranted. Decision, *supra,* at 2.

■ The basic issue before this court is whether Judge Hall abused his discretion in denying Flushing's motion for an order directing Parr to post indemnity. Of course, the bankruptcy judge is not required to order the debtor in a Chapter XI proceeding to indemnify the estate against subsequent loss or diminution until the entry, if any, of an order of adjudication. Section 326 of the Bankruptcy Act, 11 U.S.C. § 726,[3] and Fed.R.Bankr.P. 11–20(d)[4] state that the debtor *may* be required to post indemnity to prevent the assets of an estate from diminishing during the course of a potentially unsuccessful arrangement. As stated in 8 Collier, Bankruptcy ¶ 4.20(7), at 446–47 (14th rev. ed. 1976):

> The granting of an order requiring the filing of an indemnity bond or undertaking lies in the discretion of the court. Even if it appears that there will be loss to or diminution of the estate, the court need not necessarily compel the filing of an indemnity. It may be difficult, if not impossible in some situations, for the debtor to furnish a bond or other undertaking in compliance with the court's direction for indemnification. In that case, requiring indemnification could very well spell the doom of the Chapter XI case.

The filing of the Chapter XI petition is no panacea for the debtor's financial ills and some loss is to be expected at the early stages of the case until the debtor effects economics and takes steps which will lead to rehabilitation of the business.

> Therefore, unless inordinate losses are projected, it would not constitute an abuse of discretion to refuse to order the debtor to file a bond or undertaking for a reasonable limited period of time. A loss in operations during the first several months could well be recouped in subsequent months with ultimate benefit to the estate. [footnotes omitted]

■ There is no question that here inordinate losses by the debtor are projected. As Judge Hall noted, "expenses of the property continue relentlessly",[5] no plan has been presented to the creditors, and there is little hope that Parr will be able to operate during the 1979 racing season. Given these circumstances, plus the fact that eighteen months have passed since Parr filed its petition for an arrangement under Chapter XI, this court finds that Judge Hall's failure to require Parr to post indemnity constituted an abuse of discretion. The bankruptcy judge has a duty to determine the likelihood of success of an arrangement under Chapter XI. Where, as here, the prospect of failure looms great, indemnification is necessary to prevent further erosion of the estate's assets to the detriment of the creditors having lawful claim thereto. *See In re Kelley,* 388 F.Supp. 338, 341 (N.D.Ga.1975).

A comparison of this case with *In re International Swimming Pool Corp.,* 186 F.Supp. 63 (S.D.N.Y.1960), the only reported case to this court's knowledge where an

3. Where a petition is filed under section 722 of this title, the court may, upon hearing and after notice to the debtor and to such other persons as the court may direct, order the debtor to file a bond or undertaking, with such sureties as may be approved by the court and in such amount as the court may fix, to indemnify the estate against subsequent loss thereto or diminution thereof until, in the event of the entry of an order of adjudication under this chapter, the entry of such order.

4. The court may, after hearing on notice to the debtor and such other persons as the court may direct, order the debtor to indemnify or otherwise protect the estate against subsequent loss thereto or diminution thereof until the entry, if any, of an order of adjudication.

5. The following are the debtor's approximate monthly expenses: $1,400 for office rental; $6,400 for security guard service; $9,000 for fire and liability insurance coverage; $29,000 for real property taxes. In addition, Parr has failed to comply with an order of the bankruptcy court directing it to pay outstanding real estate taxes in the amount of $345,492.21. There is also evidence that structural damage is beginning to occur to the debtor's property.

order denying indemnification was appealed, is illuminating. There the debtor suffered losses for the first two months of its arrangement. However, the debtor's business was seasonal and showed signs of entering a profit-making stage when the indemnity issue was adjudicated. The court held that given the beginnings of an upsurge in the debtor's business and the lack of proof that the debtor would sustain future losses, the bankruptcy referee properly denied the application for indemnification. Here, on the other hand, after eighteen months in an arrangement the debtor has shown no signs of rehabilitation and all the evidence adduced at the hearing before the bankruptcy judge indicated that future losses would be significant.

■ Judge Hall's concern that to require indemnification would result in the adjudication of Parr and thereby abort the attack on Flushing's lien does not justify his refusal to demand an otherwise necessary indemnification. First, if Parr were adjudicated a bankrupt the trustee in bankruptcy would have the authority and the duty to contest to the validity of the lien. § 70c of the Bankruptcy Act, 11 U.S.C. § 110(c). *See* 4A Collier, *supra*, ¶ 70.04, at 55. Second, even if Flushing's lien was successfully attacked by Parr, Parr's debts would remain and the value of the estate would continue to diminish. Moreover, any assets derived from setting aside the lien would constitute pre-Chapter XI assets and could not be applied to future expenses without a substitution or replacement of assets of equivalent worth. *Cf. In re Silverman*, 4 Bankr.Ct.Dec. 127 (S.D.N.Y.1978) (Chapter XII proceeding); 8 Collier, Bankruptcy, *supra*, ¶ 4.20[8], at 447. Therefore, the debtor's estate will suffer a

depletion or loss for which indemnity is required even if the attack on Flushing's lien is allowed to proceed and is ultimately successful.[6]

■ This court is aware of the principle that where, as here, "the Creditors' Committee recommends that no indemnity be required, only the most compelling circumstances should convince the court to contravene their wishes . . . ." Herzog, *Indemnification in Chapter XI Proceedings*, 32 J.Nat.Ass'n Referees in Bankruptcy, 52 (1958), *quoted in In re International Swimming Pool Corp., supra* at 64. Having reviewed the record in this action, however, the court is convinced that compelling circumstances exist for requiring indemnification. Flushing is being forced to expend considerable sums of money each month to preserve its security.[7] In effect, Flushing is financing Parr's Chapter XI proceeding (and Parr's attack on Flushing's lien) for the benefit of the debtor and its unsecured creditors. If Parr and its general creditors wish to continue to take advantage of the rehabilitation that Chapter XI offers to a debtor, then they should bear part of the burden of supporting the proceeding. As it stands now, the creditor with least to benefit from the Chapter XI proceeding is being forced to bear the bulk of the expense of supporting it; this is inequitable.

Having found that indemnification is necessary, the court is unwilling to say that a bond of $1,000,000 is required. It would not be unreasonable to require Parr to post a bond to indemnify the estate for a time period that would permit Parr to litigate its attack on the Flushing lien. The bankruptcy judge could then adjourn the indemnity hearing and on the adjourned date deter-

---

6. The only advantage that Parr would derive from Flushing's lien being set aside is that it would be able to issue certificates of indebtedness with security and priority over all existing obligations. It cannot do so now because of Flushing's status as a secured creditor. *See In re Parr Meadows Racing Assoc.*, 78 C 1365 (E.D.N.Y. July 28, 1978). Whether purchasers could be found for such certificates, however, is highly questionable given Parr's poor track record thus far.

7. The court does not attach great significance to the fact, noted by Judge Hall, that in the event of an adjudication Flushing would still be faced with the expenses in connection with the debtor's property that it is presently incurring. An adjudication would enable Flushing to begin to take steps to recover on the mortgage note executed by Parr. Therefore Flushing would be in a better situation after an adjudication than it is now, despite the fact that the expenses would remain.

mine whether additional indemnity should be required. *See* 8 Collier, Bankruptcy, *supra*, ¶4.20[9], at 449. Whether, as a practical matter, such a procedure is feasible, the court leaves for the bankruptcy judge to determine.

Accordingly, the order of the bankruptcy judge denying Flushing's motion for indemnity is reversed and the case is remanded to the bankruptcy court with the direction that the court require Parr to post an indemnity bond issued by such sureties as may be approved by that court in an amount to be determined by the court within a reasonable time period.

So ordered.

